Doolittle *v.* Bridgeman.

---

DOOLITTLE *et al. v.* BRIDGEMAN AND PARTRIDGE.

1g 265
j129 394

Where D. and C. each furnished a moiety of the money to purchase a quarter section of land from the United States, for the benefit of C., and to secure the payment of the money which D. had advanced towards the land, it was purchased in his name in trust for C., and soon after C. died, without having obtained a deed for the land; it was held that the heirs of C. had, in equity, an unquestionable right to the undivided half of the land; but that, as the estate of the deceased was insolvent, it should be subjected to the payment of his just debts. Held also that the trust in which D. held the land could not be changed by an averment in his answer, not responsive to the bill, that he had executed a bond to C. after the original purchase of the land, binding himself to deed it to C., upon his paying the amount he had advanced within a stipulated time, or in default forfeit

the land; and that it was accordingly forfeited. Held also that the conveyance of the land to P., the mother of C., was void, as against his creditors; and she being administratrix of the deceased at the time of the conveyance to her, that it should be held by her as representative of the estate, and as subject to the demands of creditors as if owned by the testator at the time of his death. Held also that D. and P., having had title to the quarter section of land, and having disposed of one half of it to third persons, the remaining half, held by P., should be subject to the claims of creditors and heirs.

In Equity. By writ of error, under territorial laws, to Des Moines District Court.

A bill in chancery, filed by Bridgeman and Partridge against Philinda Donaldson and William Phinney, administrators, with the will annexed of Calvin Donaldson, deceased; and also against A. Donaldson, A. Marten, and A. Doolittle.

The bill sets forth that C. Donaldson became indebted to the complainants on three promissory notes, amounting, with interest, to about $458; that, after the time of executing the notes, he made his last will and testament, by which, after bequeathing sundry legacies, he devised to his mother, the said Philinda Donaldson, as his residuary legatee, all the residue of his property, real and personal; and that soon after making the will he departed this life, the latter part of January, 1841, and thereupon letters of administration were granted to said P. Donaldson and W. Phinney. The bill charges, that the said letters testamentary were illegally granted to them; as the will had not been legally proved, and the security taken was wholly insufficient to secure the creditors in a faithful administration of the estate, and in the payment of their several dividends arising therefrom; and also charges that they were administrators in their own wrong; that a considerable amount of property, including notes and accounts, belonging to the estate, had come into their hands, and a large portion disposed of and collected by them; and that the proceeds had been illegally wasted in paying pretended legacies, or appropriated or converted to their own use, without paying the debts honestly due by said estate, in defraud of complainants and other

creditors. The bill then avers that C. Donaldson, before and at the time of his death, was the equitable owner of certain real estate, or of some part thereof, to wit: the south-west quarter of section thirteen, in township seventy, north of range three, west, containing one hundred and sixty acres, in the county of Des Moines; that the land was purchased from the United States in the name of Amizi Doolittle, but in fact for the use of said Calvin Donaldson; and that the administrators well knew the interest which the estate had in said quarter section of land; that said Calvin had paid either the whole or some part of the purchase-money for the land, and had borrowed the residue of said Doolittle, permitting him to take the title in his own name by way of security, subject, however, to redemption; and that Doolittle held it in trust for the exclusive use and benefit of said Calvin, who, previous to his death, had paid off and discharged all that was due on the bond, excepting from three to six dollars, which had since been paid by the administrators, or one of them; and that they had fraudulently procured the said ·Doolittle to make a deed in fee to said Philinda Donaldson, in her individual right, when the same was held in trust, and should have been conveyed for the benefit of said estate, to satisfy the just claims of creditors. The bill also charges that Philinda, further to injure and defraud complainants, as creditors of the estate, confederated with one of the defendants, Alonzo Donaldson, and conveyed to him the north half of the quarter section of land, without adequate consideration, &c.; and that he subsequently conveyed the same to Abner Marten, and that the same was done by the parties with a knowledge of the facts and circumstances before charged. The bill concludes with a prayer that the administrators, in case they have legally administered, be decreed to disclose all assets belonging to said estate that had come into their hands, and arrange the same for distribution, and to have their distributive share set apart to them; and, in default thereof, they pray for a decree against the administrators, as in their own wrong for the amount of their debt; that the land before described be sold, and sufficient of .the proceeds applied to the

payment of their demand; that the defendants be decreed trustees of the land for the benefit of the creditors of the estate, and that the deeds referred to be cancelled, and decreed fraudulent and void, as against the creditors of the estate.

Answers were filed by the respective defendants. The opinion of the court sufficiently shows in what particulars these answers deny the allegations of the bill, and what facts were established by the evidence in the case.

The court below decreed the sale of the south half of the quarter section to satisfy the claim of complainants; and A. Doolittle and P. Donaldson were decreed to pay the costs of the suit. The bill was dismissed as to the other defendants.

*Hall* and *Mason*, for the plaintiffs in error.

*David Rorer*, for the defendants.

*Opinion by* HASTINGS, C. J.   It is evident from the bill, answers, testimony, and exhibits in this case, that the lands described in the bill of complaint were purchased of the government with the funds of said Doolittle and Calvin Donaldson, deceased.   Doolittle furnishing one half of the purchase-money, and Donaldson, deceased, the other half, the land having been purchased in the name of Doolittle.   Donaldson then, at the time of his decease, owned one undivided half of said land, the naked legal title to the same being in Doolittle, his trustee.   The right of Donaldson's heirs to his moiety of the land, is as unquestionable in a court of equity as it would have been had Doolittle made a declaration of his trust, and conveyed the same to Donaldson before his decease. It cannot be reasonably doubted, we think, that aside from any subsequent arrangement between the parties and the subsequent acts of Doolittle after the death of Donaldson, that the one half of said tract of land should be subjected to the payment of Donaldson's just debts, the estate of the deceased being insolvent.   It is set up in the defense, that the trust was changed by a subsequent contract between Doolittle and

Donaldson in his life-time. Doolittle, in his answer, avers that he executed a bond to Donaldson, obligating himself to convey the whole of said tract of land upon the payment of $120 by a time agreed and stated therein, and that if Donaldson did not pay the said sum of money at the time specified, he should forfeit to Doolittle his interest in the land. It is not averred that Donaldson executed the bond and bound himself to forfeit, or did any act by which he obligated himself to incur such a penalty other than by accepting the bond. Is the averment in Doolittle's answer of the existence of such a contract, testimony? It clearly would be, if it had been responsive to any charge in the bill. The bill does not aver that such an outstanding contract existed, nor seek discovery of the contents of the same. If then the defendant choose to set up such a contract to avoid the effect of the discovery sought, and to change the trust, or to destroy the same by the forfeiture claimed, we believe it was incumbent on him to prove such contract. If such a bond ever existed, Doolittle could have procured the same from his co-defendants, who are the administrators of the estate of said Donaldson, or prove its destruction or loss, or prove its contents, or at least have stated his inability to do so. That portion of the bond, providing for a forfeiture of Donaldson's half of the land, is so unreasonable and contrary to the ordinary mode of transacting business among men, even if that part of the answer averring the same had been strictly responsive to the bill, it would be received as evidence of but little weight. But if we grant that such a bond existed, we do not see how it will affect Donaldson's original interest in the land. The terms of forfeiture will not be enforced by a court of equity, as equity will not countenance a transaction by which one party claims eighty acres of land, because the other party had failed to purchase another interest in land and pay for the same as he had agreed. Doolittle, it seems, after the death of said Calvin Donaldson, in consideration of love and affection, being a brother, conveyed the said tract of land to one Philinda Donaldson, the mother, heir, administratrix, and residuary legatee of the said Calvin Donaldson,

16

deceased.    Mrs. Donaldson claims in her answer, that the land was conveyed to her in her own right, and that she can hold the same in that right, as against the creditors of the deceased. We have come to the following conclusions on the transactions set up here to defend against the complainant's bill by the defendants :

1.  That the conveyance of Doolittle to Philinda Donaldson, for the consideration specified, is void as against the creditors of the deceased.

2.  From the fact that the deceased had no real estate inventoried by the administrator of his estate, and in his will devised real estate to the said Philinda Donaldson, and from the testimony of witnesses, and the answers tending to show that both the said Philinda and the said Calvin Donaldson in his life-time considered the land in question his land, we cannot doubt the testator intended· in his will to devise the said land to his mother.

3.  Such being the intention of the testator, the said Philinda being the heir and administratrix, and the conveyance being voluntary, we must consider the conveyance to Philinda made to her as a representative of the testator, Calvin Donaldson, and that the lands are held by her as subject to the demands of creditors, as if the lands had been owned in fee by the testator at the time of his decease.

4.  The defendants, Doolittle and Mrs. Donaldson, having had the title of the land, and having disposed of the one-half of the land to third persons, we conclude they intended said remaining eighty acres as the share of the lands belonging to the testator's estate, and, as such, subject to the claims of the heirs and creditors.

That portion of the decree, therefore, of the court below, decreeing a sale of said eighty acres as therein specified, is affirmed ; and any portion of said decree inconsistent with this opinion, is reversed, and a decree will be entered in this court accordingly.